

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DERWIN L. ISAAC,**

Plaintiff,

v.                                                            Civil Action No. **3:15CV124**

**CHAPLAIN PRUETTE,** *et al.,*

Defendants.

## MEMORANDUM OPINION

Derwin L. Isaac, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed

this 42 U.S.C. § 1983 action.[1]  The matter is before the Court for evaluation pursuant to 28

U.S.C. §§ 1915(e)(2) and 1915A.

### I.      Preliminary Review

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any

action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state

a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The

first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims

where the "'factual contentions are clearly baseless.'" *Clay v. Yates,* 809 F. Supp. 417, 427

---

[1] The statute provides, in pertinent part:

Every person who, under color of any statute . . . of any State . . . subjects, or
causes to be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an
action at law . . . .

42 U.S.C. § 1983.

(E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

2

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In

order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the

plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.*

*DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft*

*Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th

Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574

F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*,

statutory and constitutional claims that the inmate failed to clearly raise on the face of his

complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring);

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    Summary of Allegations

The allegations in Isaac's Complaint are as follows:[2]

> I arrived at the Richmond City Jail on October 29, 2014 . . . upon my arrival I was informed that I had to submit a request form in order to be added to a list to attend Jummah service. After several weeks of no response from Chaplain Pruette in regards to my request I spoke with him personally . . . . The Chaplain took my name and assured me that I would be added to the list but on that Friday again I wasn't allowed to attend the Jummah prayer service because my name wasn't on a list. . . . [O]n November 28, 2014, I asked Pod Officer Gaskins to contact unit control in inquisition of Jummah service and she stated to me that services were cancelled because of the Thanksgiving Day holiday and I explained to her that Muslims do not celebrate pagan holidays and that our religious service should not be affected by the observation of the holiday. The Shift Supervisor Sgt. Taylor stated that the Muslim guest that comes in on Friday for Jummah service had cancelled because of the holiday and I was in disagreement about that because I was explaining to her that no Islamic clergy would ever cancel Jummah service or any other Islamic engagement because of a holiday we don't observe. Then she stated because he wasn't coming that she wasn't going to honor allowing us to conduct our service. I told her that we did not need a representative and that the services could be held and led by the elected Imam of the Islamic Ummah here at the Richmond City Jail as it has been done on an

---

[2] The Court corrects the spelling, punctuation, and capitalization in the quotations from Isaac's Complaint. The Court employs the pagination assigned by the CM/ECF docketing system for citations to the Complaint.

almost regular basis and she still denied us Jummah prayer service. . . .  Now
again on December 26, 2014, I spoke with Pod Officer Gaskins once again about
Jummah service and we went through the same process as previously on the
Thanksgiving Day holiday.  This time I spoke with Sgt Taylor personally as she
came to the pod to address the issue and she stated to me that the service was
again cancelled because Chaplain Pruette did not submit a list for the Jummah
participants thus for canceling the service. . . .  My complaint goes even further to
the extent that we as Muslims are not being allowed to have a meal which will
adequately accommodate our religious beliefs as well.  This facility does not offer
Halal or Kosher meals and we would be forced to eat a vegetarian meal which
consists mainly of beans as a main course. . . .

(Compl. 6, 8–10)  Isaac claims that

If a religious diet is not extravagant to provide and if the request can be
handled without significant administrative difficulty then under . . . RLUIPA, it
ought to be provided.  It is clear that the courts have ruled that consistent with the
First Amendment and the Equal Protection Clause, that services cannot be
prohibited. . . .  So therefore, I'm filing this claim on the grounds that #1 my civil
rights, #2 constitutional rights, #3 religious rights, and also #4 my equal rights
were violated from the results of these actions.

(*Id.* at 11–12.)  Isaac demands $3,000,000 and injunctive relief in the form of "changing policies

that violates rights." (*Id.* at 7.)

Isaac names Chaplain Pruette and Sergeant Taylor as defendants (collectively

"Defendants"). (*Id.* at 1, 3.)  The Court construes Isaac to raise the following claims for relief:

Claim One:     Chaplain Pruette violated Isaac's First Amendment rights[3] by failing to
place Isaac on the list to attend Jummah service.

Claim Two:     Defendants violated Isaac's First Amendment rights by cancelling two
Jummah services.

Claim Three:   Defendants violated Isaac's First Amendment rights by failing to provide
him a religious diet.

Claim Four:    Defendants violated the Equal Protection Clause of the Fourteenth
Amendment.[4]

---

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the
free exercise thereof . . . ." U.S. Const. amend. I.

[4] "No State shall . . . deny to any person within its jurisdiction the equal protection of the
laws." U.S. Const. amend. XIV, § 1.

As explained below, Isaac's claims will be DISMISSED for failure to state a claim for relief.

### III.    Analysis

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [allege] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions).

### A.     Claim for Injunctive Relief is Moot

Here, the alleged constitutional violations took place in the Richmond City Jail. Isaac, however, is no longer incarcerated there. (*See* ECF No. 10, at 1.) "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Hence, Isaac's claim for injunctive relief against Defendants is no longer viable. Accordingly, Isaac's request for injunctive relief will be DISMISSED AS MOOT.[5]

---

[5] While Isaac fails to squarely raise a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§ 2000cc *et seq.*, even if he had done so, his transfer mooted any claim for relief under RLUIPA. *See Rendelman*, 569 F.3d at 184 (explaining that RLUIPA does not authorize a claim for money damages against an official sued in his or her official or individual capacity and transfer moots claim for injunctive relief).

**B.      First Amendment**

To state a Free Exercise claim, Isaac must allege facts that suggest that "(1) he holds a

sincere belief that is religious in nature" and (2) that Defendants imposed a substantial burden on

the practice of his religion. *Whitehouse v. Johnson*, No. 1:10CV1175 (CMH/JFA), 2011 WL

5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r Internal Revenue*, 490

U.S. 680, 699 (1989)).  "Government officials impose a substantial burden on the free exercise

of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate

his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5,

2011) (alteration in original) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (some

internal quotation marks omitted)).  A mere inconvenience to the exercise of religion fails to give

rise to a First Amendment violation. *McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir.

2004) ("There may be inconveniences so trivial that they are most properly ignored.")

Moreover, "[d]e minimis burdens on the free exercise of religion are not of constitutional

dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (citations omitted).

Second, Isaac must allege that the restriction fails to further a legitimate penological interest.

*See Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

**1.      Jummah Service (Claims One and Two)**

Assuming without deciding that Isaac's religious beliefs are sincere and that the denial of

multiple Jummah services imposes a substantial burden on his religion, Isaac still fails to state a

viable First Amendment claim for damages with respect to Defendant Pruette or Defendant

Taylor.

In Claim One, Isaac alleges that he was initially frustrated in his ability to attend Jummah

services because Defendant Pruett failed to add Isaac to the list of inmates who wished to attend

6

Jummah service. However, the facts as pled suggest Defendant Pruette's failure to promptly add Isaac to the Jummah list was a matter of neglect or inadvertence. "[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Lovelace*, 472 F.3d at 201 (citations omitted). Accordingly, Claim One will be DISMISSED.

In Claim Two, Isaac contends that Defendants violated his First Amendment rights because on two Fridays between his admission to the jail on October 29, 2014 and the filing of his Complaint in late February of 2015, Jummah prayer service was cancelled. (Compl. 8–9.) On November 29, 2014, Sergeant Taylor informed Isaac that the outside Muslim religious sponsor cancelled the service. While not entirely clear from Isaac's pleadings, it appears that Isaac faults Defendant Pruette for the second cancellation on December 26, 2014.

Given the lack of specificity in Isaac's Complaint, the Court has difficulty determining whether Isaac alleges a substantial burden on his religion. Nevertheless, even if Isaac had alleged a substantial burden on his religion, Defendants' actions in cancelling Jummah services pass constitutional muster because the actions were reasonably related to legitimate penological interests. *See Turner*, 482 U.S. at 89–91. In assessing whether a regulation or managerial decision is reasonable, courts consider (1) whether a "valid, rational connection [exists] between the prison regulation [or managerial decision] and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether an "absence of ready alternatives" to the regulation or managerial decision in question exists. *Id.* at 89–90 (citations omitted) (internal quotation marks omitted); *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350–52 (1987). Significantly, in conducting this inquiry,

7

"[t]he burden, moreover, is not on the State to prove the validity of prison regulations [or managerial decisions] but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone*, 482 U.S. at 350; *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)). Here, the Court faces difficulty in assessing the reasonableness of the jail's actions under *Turner* because Isaac failed to meet his burden to allege relevant facts.

Generously construing Isaac's Complaint, he suggests that Defendants violated his First Amendment rights when they twice cancelled Jummah services when the Muslim guest was not available. Isaac alleges that he argued with Sergeant Taylor about whether the guest had really cancelled, and that she stated "she wasn't going to honor allowing us to conduct our service. [Isaac] told her that we did not need a representative and that the services could be held and led by the elected Imam of the Islamic Ummah here at the Richmond City Jail as it has been done on an almost regular basis and she still denied us Jummah prayer service." (Compl. 8–9.)

Assuming Defendants refused to allow Isaac and others to hold the Jummah service on November 29, 2014 and on December 26, 2014, when no outside sponsor was available, this action would be rationally related to the legitimate government interest of security. *Cf. Smith v. Kyler*, 295 F. App'x 479, 481–82 (3d Cir. 2008) (citations omitted) (holding that policy "to prohibit group worship in the absence of an approved, volunteer Faith Group Leader" is "rationally connected" to the "legitimate interest" of "maintaining prison security"); *Hadi v. Horn*, 830 F.2d 779, 784–85 (7th Cir. 1987) (requiring a non-inmate sponsor at Jumah services a legitimate security measure); *Tisdale v. Dobbs*, 807 F.2d 734, 738 (8th Cir. 1986) (same).

Moreover, Isaac fails to identify, as he must, any "ready alternatives" to accommodate his desire to attend Jummah services. *O'Lone*, 482 U.S. at 350 ("[P]lacing the burden on prison

8

officials to disprove the availability of alternatives . . . fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators.") By failing to identify alternatives, the Court has difficulty assessing the impact that accommodating Isaac would have on jail resources, other inmates, or staff. Isaac vaguely suggested that an alternative would be to allow inmates to hold services without an outside religious leader present. Once again, such a policy is not a feasible alternative due to legitimate prison security concerns. Moreover, if jail officials allowed Muslim inmates to lead Jummah services, then inmates of other religions would demand equal treatment, "compounding the security problems that underlie the policy." *Hadi*, 830 F.2d at 786.

Furthermore, Isaac has alternative means to practice Islam. Isaac makes no allegation that he was prohibited from engaging in other tenets of his religion such as worship, prayer, fasting, or study during his incarceration in the Richmond City Jail. *See O'Lone*, 482 U.S. at 352 (finding no First Amendment violation when inmates who could not attend Jumah could participate in "other religious observances of their faith"); *Smith*, 295 F. App'x at 482 (holding that despite inability to participate in congregational prayer inmate had alternative means to practice religion). Thus, Isaac has sufficient alternative means to practice his religion.

Based on the facts as alleged by Isaac, the cancellation of services on two Fridays was rationally related to legitimate penological interest in prison security. Accordingly, Claim Two will be DISMISSED.

### 2. Religious Diet

Next, in Claim Three, Isaac vaguely suggests that he was not provided his desired religious diet while incarcerated in the Richmond City Jail. In support of his claim, Isaac states, in sum: "[W]e as Muslims are not being allowed to have a meal which will adequately

9

accommodate our religious beliefs as well. This facility does not offer Halal or Kosher meals and we would be forced to eat a vegetarian meal which consists mainly of beans as a main course. . . ." (Compl. 10.) First, Isaac wholly fails to allege facts indicating that the named Defendants had any direct involvement or were personally involved in the deprivation of his First Amendment rights with regard to his diet. For that reason alone, this claim should be dismissed.

Second, while Isaac briefly recites his own interpretation of First Amendment jurisprudence as it pertains to an institution's obligation to provide religious diets (*see id.* at 10–11), his Complaint is totally devoid of any allegation that he felt a substantial pressure to abandon or change his religious beliefs. At most, he states that he would be forced to eat a vegetarian meal but fails to identify how this would substantially burden his practice of religion.[6] Isaac fails to demonstrate that Defendants substantially burdened his practice of religion. Accordingly, Claim Three will be DISMISSED.

### C.    Equal Protection Claim

In a rambling and incoherent manner, Isaac alleges that

> [i]t is clear that the courts have ruled that consistent with . . . the Equal Protection Clause that services can not be prohibited, and by the prohibition of me not being allowed to attend Jummah prayer service because my name was not on a list to attend, and from the prohibition of the cancellation of Jummah service for the observation of a pagan holiday, and for the prohibition of not allowing us to have Talim service, and also for the prohibition of not providing Muslims with adequate dietary meals.

---

[6] Moreover, Isaac's Complaint fails to identify exactly what diet his religion requires him to eat. Isaac states that "for Muslims it is a dietary obligation for us not to eat meat that is not Halal, and to force us to eat a vegetarian meal while there are other means of substituting the meat we are being served such as tuna fish or any other kind of fish, peanut butter and jelly, grilled cheese sandwiches or halal meats falls into the category of this being an unconstitutional act." (Compl. 10–11.) From this statement, it appears that no one is forcing him to eat non-Halal meat and a vegetarian diet could meet his religious dietary needs.

10

(Compl. 11.) Isaac alleges that this violates his "Equal Rights." (*Id.* at 12.) Despite mentioning the Equal Protection Clause, Isaac's bare allegations fail to make out a plausible claim for relief.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Isaac must allege that: (1) that he and a comparator inmate were treated differently and were similarly situated; and (2) that the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Isaac identifies no comparator inmate, as he must, who was treated differently than himself and was similarly situated. Thus, he fails to allege facts indicating that Defendants violated his equal protection rights. Accordingly, Isaac's equal protection claim will be DISMISSED.

Isaac's claims and the action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

Date: /2-/0-/5
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge

11